O

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| PRENTICE A. HALE, | ) Case No. CV 12-1906-JPR |
| Plaintiff, | ) |
| | ) |
| vs. | ) MEMORANDUM OPINION AND ORDER<br>) REVERSING COMMISSIONER AND<br>) REMANDING FOR FURTHER |
| MICHAEL J. ASTRUE, | ) PROCEEDINGS |
| Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**I.    PROCEEDINGS**

Plaintiff seeks review of the Commissioner's final decision denying her application for Social Security disability insurance benefits ("DIB").  The parties consented to the jurisdiction of the undersigned U.S. Magistrate Judge pursuant to 28 U.S.C. § 636(c).  This matter is before the Court on the parties' Joint Stipulation, filed December 13, 2012, which the Court has taken under submission without oral argument.  For the reasons stated below, the Commissioner's decision is reversed and this matter is remanded for further proceedings.

1

## II.   BACKGROUND

Plaintiff was born on May 26, 1959.  (Administrative Record ("AR") 38.)  She has a high school diploma.  (Id.)  Plaintiff worked for approximately 27 years as a telephone operator.  (AR 41-42, 158.)  She stopped working on January 8, 2005, when she was injured in an automobile accident.  (AR 166, 295-96.)  On November 17, 2008, Plaintiff filed an application for DIB, alleging a disability onset date of January 8, 2005.  (AR 144.)  The application was denied on March 10, 2009.  (AR 96-101.)

After Plaintiff's application was denied, she requested a hearing before an Administrative Law Judge ("ALJ").  (AR 105-06.)  A hearing was held on May 27, 2010, at which Plaintiff, who was represented by counsel, testified on her own behalf.  (AR 34-86.)  Vocational Expert ("VE") Stephen Berry also testified.  (Id.)  On August 10, 2010, the ALJ issued a written decision determining that good cause existed to reopen Plaintiff's December 7, 2005 DIB application[1] and that Plaintiff was disabled from January 8, 2005, to March 10, 2006, but not after that.  (AR 15-33.)  On October 8, 2010, Plaintiff requested review of that portion of the ALJ's decision denying benefits as of March 11, 2006.  (AR 10-14.)  On December 21, 2011, the Appeals Council denied Plaintiff's request for review.  (AR 3-7.)  This action followed.

## III. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  The ALJ's findings and decision should be upheld if they are free of legal error and

---

[1]The Administrative Record does not contain a copy of this application.

1  are supported by substantial evidence based on the record as a

2  whole.  § 405(g); <u>Richardson v. Perales</u>, 402 U.S. 389, 401, 91 S.

3  Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971); <u>Parra v. Astrue</u>, 481

4  F.3d 742, 746 (9th Cir. 2007).  Substantial evidence means such

5  evidence as a reasonable person might accept as adequate to

6  support a conclusion.  <u>Richardson</u>, 402 U.S. at 401; <u>Lingenfelter</u>

7  <u>v. Astrue</u>, 504 F.3d 1028, 1035 (9th Cir. 2007).  It is more than

8  a scintilla but less than a preponderance.  <u>Lingenfelter</u>, 504

9  F.3d at 1035 (citing <u>Robbins v. Soc. Sec. Admin.</u>, 466 F.3d 880,

10  882 (9th Cir. 2006)).  To determine whether substantial evidence

11  supports a finding, the reviewing court "must review the

12  administrative record as a whole, weighing both the evidence that

13  supports and the evidence that detracts from the Commissioner's

14  conclusion."  <u>Reddick v. Chater</u>, 157 F.3d 715, 720 (9th Cir.

15  1996).  "If the evidence can reasonably support either affirming

16  or reversing," the reviewing court "may not substitute its

17  judgment" for that of the Commissioner.  <u>Id.</u> at 720-21.

18  **IV.   THE EVALUATION OF DISABILITY**

19     People are "disabled" for purposes of receiving Social

20  Security benefits if they are unable to engage in any substantial

21  gainful activity owing to a physical or mental impairment that is

22  expected to result in death or which has lasted, or is expected

23  to last, for a continuous period of at least 12 months.  42

24  U.S.C. § 423(d)(1)(A); <u>Drouin v. Sullivan</u>, 966 F.2d 1255, 1257

25  (9th Cir. 1992).

26     A.   <u>The Five-Step Evaluation Process</u>

27     The ALJ follows a five-step sequential evaluation process in

28  assessing whether a claimant is disabled.  20 C.F.R.

1  § 404.1520(a)(4); <u>Lester v. Chater</u>, 81 F.3d 821, 828 n.5 (9th

2  Cir. 1995) (as amended Apr. 9, 1996).  In the first step, the

3  Commissioner must determine whether the claimant is currently

4  engaged in substantial gainful activity; if so, the claimant is

5  not disabled and the claim must be denied.   § 404.1520(a)(4)(i).

6  If the claimant is not engaged in substantial gainful activity,

7  the second step requires the Commissioner to determine whether

8  the claimant has a "severe" impairment or combination of

9  impairments significantly limiting his ability to do basic work

10  activities; if not, the claimant is not disabled and the claim

11  must be denied.  § 404.1520(a)(4)(ii).  If the claimant has a

12  "severe" impairment or combination of impairments, the third step

13  requires the Commissioner to determine whether the impairment or

14  combination of impairments meets or equals an impairment in the

15  Listing of Impairments ("Listing") set forth at 20 C.F.R., Part

16  404, Subpart P, Appendix 1; if so, disability is conclusively

17  presumed and benefits are awarded.  § 404.1520(a)(4)(iii).  If

18  the claimant's impairment or combination of impairments does not

19  meet or equal an impairment in the Listing, the fourth step

20  requires the Commissioner to determine whether the claimant has

21  sufficient residual functional capacity ("RFC")[2] to perform her

22  past work; if so, the claimant is not disabled and the claim must

23  be denied.  § 404.1520(a)(4)(iv).  The claimant has the burden of

24  proving that she is unable to perform past relevant work.

25  <u>Drouin</u>, 966 F.2d at 1257.  If the claimant meets that burden, a

26

27      [2]RFC is what a claimant can still do despite existing
28  exertional and nonexertional limitations.  20 C.F.R. § 404.1545;
    <u>see</u> <u>Cooper v. Sullivan</u>, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

1  prima facie case of disability is established.  Id.  If that

2  happens or if the claimant has no past relevant work, the

3  Commissioner then bears the burden of establishing that the

4  claimant is not disabled because she can perform other

5  substantial gainful work available in the national economy.

6  § 404.1520(a)(4)(v).  That determination comprises the fifth and

7  final step in the sequential analysis.  § 404.1520; Lester, 81

8  F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

9      B.    The ALJ's Application of the Five-Step Process

10      At step one, the ALJ found that Plaintiff had not engaged in

11  any substantial gainful activity since January 8, 2005.  (AR 22.)

12  At step two, the ALJ concluded that Plaintiff had the severe

13  impairments of "history of injury to the left upper extremity,

14  status post surgery to the left proximal arm with residual

15  weakness and paralysis; morbid obesity; and non-insulin-dependent

16  diabetes mellitus."  (Id.)  At step three, the ALJ determined

17  that Plaintiff's impairments did not meet or equal any of the

18  impairments in the Listing.  (AR 24.)  At step four, the ALJ

19  found that Plaintiff was unable to work from January 8, 2005, to

20  March 10, 2006 (id.), but beginning March 11, 2006, Plaintiff's

21  disability ended and she was able to perform "light work"[3] with

22  the limitations that Plaintiff

23      can stand and walk up to 4 hours and sit up to 6 hours in

24  _____

25      [3]"Light work involves lifting no more than 20 pounds at a
time with frequent lifting or carrying of objects weighing up to
26  10 pounds," a "good deal of walking or standing" or sitting,
"with some pushing and pulling of arm or leg controls."  20
27  C.F.R. § 404.1567(b).  A person capable of performing light work
is also capable of performing sedentary work, as defined in
28  § 404.1567(a).  Id.

1    an 8-hour workday with normal breaks.  She can perform

2    work that does not require climbing ladders, ropes or

3    scaffolds, or crawling, and no more than occasional

4    climbing of ramps or stairs, balancing[,] stooping,

5    kneeling and crouching.  The claimant is right-hand

6    dominant and cannot lift, reach, push, pull, handle, or

7    finger objects with her non-dominant left upper

8    extremity/hand.  She can perform work that does not

9    require even moderate exposure to extreme vibration and

10    no exposure to extreme cold, hazardous machinery,

11    unprotected heights, or other high risk, hazardous or

12    unsafe conditions.

13 (AR 25-26.)  Based on the VE's testimony, the ALJ concluded that

14 Plaintiff could not perform her past relevant work as a telephone

15 operator but had the RFC to perform such jobs as greeter and

16 final inspector.  (AR 29.)  The ALJ concluded that jobs existed

17 in significant numbers in the national economy that Plaintiff

18 could perform.  (Id.)  Accordingly, the ALJ determined that

19 Plaintiff was not disabled.  (AR 30.)

20 **V.    DISCUSSION**

21     Plaintiff alleges that the ALJ erred in (1) evaluating and

22 weighing the findings and opinions of Plaintiff's treating

23 physician; (2) evaluating Plaintiff's credibility; and (3)

24 finding that Plaintiff could perform other work as of March 11,

25 2006.  (J. Stip at 2-3.)  Because the ALJ rejected Plaintiff's

26 treating physician's opinion and Plaintiff's testimony for

27 reasons that were not supported by the record, the ALJ's decision

28 must be reversed and this matter remanded for further

1  proceedings.

2         A.    The ALJ Erred in Rejecting Plaintiff's Treating

3               Physician's Opinion

4         Three types of physicians may offer opinions in social

5   security cases: "(1) those who treat[ed] the claimant (treating

6   physicians); (2) those who examine[d] but d[id] not treat the

7   claimant (examining physicians); and (3) those who neither

8   examine[d] nor treat[ed] the claimant (non-examining

9   physicians)."  Lester, 81 F.3d at 830.  A treating physician's

10  opinion is generally entitled to more weight than the opinion of

11  a doctor who examined but did not treat the claimant, and an

12  examining physician's opinion is generally entitled to more

13  weight than that of a nonexamining physician.  Id.

14        The opinions of treating physicians are generally afforded

15  more weight than the opinions of nontreating physicians because

16  treating physicians are employed to cure and have a greater

17  opportunity to know and observe the claimant.  Smolen v. Chater,

18  80 F.3d 1273, 1285 (9th Cir. 1996).  The weight given a treating

19  physician's opinion depends on whether it was supported by

20  sufficient medical data and was consistent with other evidence in

21  the record.  See 20 C.F.R. § 404.1527(c)(2).  If a treating

22  physician's opinion was well supported by medically acceptable

23  clinical and laboratory diagnostic techniques and is not

24  inconsistent with the other substantial evidence in the record,

25  it should be given controlling weight and rejected only for

26  "clear and convincing" reasons.  See Lester, 81 F.3d at 830;

27  § 404.1527(c)(2).  When a treating physician's opinion conflicts

28  with other medical evidence or was not supported by clinical or

1  laboratory findings, the ALJ must provide only "specific and
2  legitimate reasons" for discounting that doctor's opinion.  Orn
3  v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007).  Indeed, the ALJ
4  may discredit treating-doctor opinions that are conclusory,
5  brief, and unsupported by the record as a whole or by objective
6  medical findings.  See Batson v. Comm'r of Soc. Sec. Admin., 359
7  F.3d 1190, 1195 (9th Cir. 2004); Thomas v. Barnhart, 278 F.3d
8  947, 957 (9th Cir. 2002).  Other factors relevant to the
9  evaluation of a treating physician's opinion include the
10 "[l]ength of the treatment relationship and the frequency of
11 examination" as well as the "[n]ature and extent of the treatment
12 relationship" between the patient and the physician.
13 § 404.1527(c)(2)(i)-(ii).
14      Plaintiff's treating physician, Dr. Luani Lee, filled out an
15 RFC Questionnaire form in July 2010, stating that she had seen
16 Plaintiff every three months for a year and that Plaintiff had
17 "Diabetes, Hyperlipidemia, Hypertension, Obesity, [and]
18 Depression," which caused "chronic leg pain, fatigue,
19 depression," and "[p]ain while walking on bilateral legs."  (AR
20 369.)  She stated that the clinical findings and objective signs
21 supporting her diagnosis were "depression from chronic disability
22 after motor vehicle accident 5 years ago" and "[o]besity."  (Id.)
23 She opined that Plaintiff could walk one city block without rest
24 or severe pain, sit for one hour and stand for 10 minutes at a
25 time before needing to change position, and sit for at least six
26 hours and stand and walk for less than two hours in an eight-hour
27 workday.  (AR 370-71.)  She stated that Plaintiff could lift 10
28 pounds frequently and 20 pounds occasionally.  (AR 371.)  She

also noted that with "prolonged sitting," Plaintiff would need to elevate her leg to above heart level for two hours of an eight-hour workday.  (Id.)  At the hearing, the VE testified that if Plaintiff needed to elevate her leg to above heart level, she would be unable to work.  (AR 74.)

The ALJ discounted Dr. Lee's opinion for the following reasons: she had seen Plaintiff only "about four times during the period of a year"; the medical records of Plaintiff's foot abscess and hypertension did not support her highly restricted RFC; a gap in treatment between March 2006 and October 2008 indicated that Plaintiff's conditions had improved; Dr. Lee's finding that Plaintiff did not need an assistive device to walk "is another indication that [her] functional limitations (particularly her ability to walk) is [sic] not as significant as alleged"; Plaintiff's claim that she had taken insulin for her diabetes since 2008 was "not well-documented in the treatment notes"; there was no indication in the record that Plaintiff's foot abscess lasted 12 months; there were no findings in the record indicating that Plaintiff's "severe diabetes and nonsevere hypertension" caused fatigue; Plaintiff "has not been hospitalized for severe complications from diabetes or hypertension"; and there was no evidence of "significant end organ damage."  (AR 23, 25, 27.)  He also discounted Dr. Lee's opinions regarding Plaintiff's depression because Dr. Lee was not a mental-health specialist and no evidence existed in the record that Plaintiff had ever been treated for depression.  (AR 23.)

The ALJ properly rejected Dr. Lee's findings regarding Plaintiff's depression because no documentation in the record

1  showed that Plaintiff's depression affected her ability to work.

2  On the contrary, Plaintiff testified that she got along well with

3  others (AR 65), and in her disability application she reported

4  that she could pay attention and follow instructions well, always

5  finished what she started, had "no problem with authority," and

6  handled stress and changes in routine "OK."  (AR 186.)  Both the

7  consultative psychologist and the state agency psychiatrist who

8  examined Plaintiff for mental impairments concluded that she had

9  no mental impairments or limitations.  (AR 320-24, 331-41.)  The

10  ALJ also properly discounted Dr. Lee's opinion regarding

11  Plaintiff's mental health because she was not a mental-health

12  specialist, unlike the two examining doctors.  See 20 C.F.R.

13  § 404.1527(d)(5); Holohan v. Massanari, 246 F.3d 1195, 1203 n.3

14  (9th Cir. 2001) (treating physician's opinion may be "entitled to

15  little if any weight" if physician "offers an opinion on a matter

16  not related to her . . . area of specialization").  Plaintiff has

17  not presented any evidence that her depression was a severe

18  impairment.

19      Several of the ALJ's reasons for rejecting Dr. Lee's RFC

20  findings, however, are directly contradicted by the evidence of

21  record, and reversal is therefore warranted.  The ALJ stated that

22  the record did not show that Plaintiff had been hospitalized for

23  complications from diabetes, when in fact the record shows that

24  she was hospitalized from October 31 to November 2, 2008, because

25  of "[r]ight foot abscess/cellulitis/diabetic foot."  (AR 280-82.)

26  The ALJ appears to have treated Plaintiff's foot abscess, leg

27  swelling, and diabetes as separate, unrelated conditions (see AR

28  28) when in fact the abscess and swelling appear to have been

1   caused by the diabetes (see AR 280-82); the ALJ's evaluation of

2   those conditions was thus inconsistent with the record as a

3   whole.  See Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th

4   Cir. 2006) (ALJ must consider "entire record as a whole").

5   Moreover, there is significant evidence in the record that

6   Plaintiff's diabetes was poorly controlled, further supporting

7   Dr. Lee's finding that it limited her ability to work.  (See AR

8   216 (December 2008, noting that Plaintiff's blood sugar was

9   "still ranging from 250-325" and "today [was] 415");[4] AR 365

10  (January 2009, noting that Plaintiff's diabetes mellitus under

11  "poor control"); AR 366 (January 2009, diabetes "uncontrolled");

12  (AR 367 (January 2009, blood-sugar reading of 307); AR 314

13  (February 2009, noting that Plaintiff's blood sugar was "usually

14  in the low 200s"); AR 356 (November 2009, diabetes "moderately

15  controlled"); AR 355 (March 2010, diabetes "out of control").)

16  The record also showed that although the abscess in Plaintiff's

17  right foot had healed by March 2010, she continued to have

18  ongoing problems with swelling in her legs.  (See AR 355 (noting

19  "0 sores" on feet but "pitting edema" in lower extremities); see

20  also AR 216-17, 278-90, 342, 356-68 (documenting instances of leg

21  swelling between October 2008 and March 2010).)  The ALJ did not

22  address this evidence.  He noted, somewhat confusingly, that the

23  medical evidence in the record since October 31, 2008, "focuses

24

25      [4]Target blood-sugar levels for nonpregnant adults with
    diabetes are 70-130 milligrams per deciliter before a meal and
26  less than 180 milligrams per deciliter after a meal.
    See Checking Your Blood Glucose - American Diabetes Association,
27  available at http://www.diabetes.org/living-with-diabetes/
    treatment-and-care/blood-glucose-control/checking-your-blood-
28  glucose.html (last visited Dec. 21, 2012).

1  on the claimant's diabetes mellitus, a right foot abscess caused

2  by a bacterial infection, hypertension and routine medical care,

3  rather than on her left upper extremity impairment, which is an

4  indication that her left upper extremity has improved."  (AR 25.)

5  But the ALJ also found that Plaintiff's diabetes was a severe

6  impairment (AR 22) – thus, the medical evidence of her diabetes

7  complications would seem to bolster, rather than disprove, her

8  disability claims.

9      The ALJ's finding that Plaintiff's diabetes was "non-

10  insulin-dependent" because insufficient documentation existed in

11  the record that Plaintiff took insulin for it (AR 22, 28) is also

12  directly contradicted by the record, which shows that Plaintiff

13  was taking insulin since at least 2005 and was continuously

14  prescribed insulin from October 2008 through at least March 2010.

15  (See AR 298 (noting in January 2005 that Plaintiff's blood sugar

16  was nearly 600 when admitted to hospital and was then "controlled

17  [with] insulin"); AR 216-18, 278-90, 355-68 (showing Plaintiff

18  prescribed NPH[5] and regular insulin consistently between November

19  2008 and March 2010).)  Thus, it was improper for the ALJ to

20  reject Dr. Lee's opinion on that basis.

21      The ALJ also erred in discounting Dr. Lee's opinion because

22  she had treated Plaintiff only four times in a year.  (AR 28.)

23  The ALJ found that because Dr. Lee "only saw [Plaintiff] for a

24

25      [5]NPH (Neutral Protamine Hagedorn) insulin is a slower-acting
26  insulin lasting approximately 18-26 hours from injection.  See
    MedicineNet.com, Insulin - drug class, medical uses, medication
27  side effects, and drug interactions, available at
    http://www.medicinenet.com/insulin/article.htm (last visited Dec.
28  21, 2012).

1  year, and only once every three months at that . . . [that] is

2  one indication that Dr. Lee does not find her impairments to be

3  as significant as alleged." (Id.)  But the record shows that

4  between 2008 and 2010 Dr. Lee referred Plaintiff to several other

5  doctors at Harbor UCLA Medical Center for tests and treatment

6  (see AR 213-312, 355-68), and Dr. Lee presumably continued to

7  oversee Plaintiff's care during that time.  Thus, her opinion was

8  entitled to "greater weight than that of an examining or

9  reviewing physician."  Benton ex rel. Benton v. Barnhart, 331

10 F.3d 1030, 1037, 1038-39 (9th Cir. 2003) (physician's opinion

11 entitled to greater weight afforded treating physicians when,

12 despite seeing plaintiff only once, physician "employed to cure"

13 and using "team approach" "had the opportunity to direct and

14 communicate with the treatment team over time, and is presumably

15 well placed to know their skills, abilities, and therapeutic

16 techniques").

17     The ALJ's finding that Plaintiff's RFC was less restricted

18 than Dr. Lee opined because Plaintiff did not need an assistive

19 device to walk or stand was also not supported by the record.

20 Dr. Lee did not state that Plaintiff could not walk or stand on

21 her own; instead, she stated that Plaintiff could not walk for

22 more than two hours a day and could sit for more than six hours

23 but would need to elevate her leg above heart level for at least

24 two hours a day when doing so.  (AR 370-71.)  The fact that

25 Plaintiff did not use an assistive device is not inconsistent

26 with these findings.

27     The ALJ's finding that the gap in treatment between March

28 2006 and October 2008 showed that Plaintiff's condition had

1   improved was also improper.  An ALJ "must not draw any inferences

2   about an individual's symptoms and their functional effects from

3   a failure to seek or pursue regular medical treatment without

4   first considering any explanations that the individual may

5   provide, or other information in the case record, that may

6   explain infrequent or irregular medical visits or failure to seek

7   medical treatment."  SSR 96-7p, 1996 WL 374186, at *7.  Plaintiff

8   reported to the consulting examiner, Dr. Rocely Ella-Tamayo, that

9   she did not have medical insurance "for 2 years . . . until

10  October 2008."  (AR 313-14.)  Plaintiff's lack of insurance could

11  have explained the gap in treatment.  But the ALJ did not

12  question Plaintiff about it during the hearing, nor did he seek

13  an explanation for it at any other time.  His adverse finding was

14  thus improper.  See SSR 96-7p; see also Orn, 495 F.3d at 638

15  (holding that adverse finding based on gap in treatment is

16  inappropriate if claimant lacked insurance and could not afford

17  treatment in question).

18       The majority of the ALJ's reasons for rejecting Dr. Lee's

19  opinion were not supported by the record, and thus his decision

20  should be reversed.  Cf. Schow v. Astrue, 272 F. App'x 647, 652-

21  53 (9th Cir. 2008) (holding that ALJ's reasons for rejecting

22  plaintiff's credibility not supported by substantial evidence

23  when "at least five" of eight reasons not supported by record).

24  The Court cannot say that these errors taken as a whole were

25  harmless, particularly given that, as explained below, the ALJ

26  also erred in assessing Plaintiff's credibility.

27       B.   The ALJ Erred in Rejecting Plaintiff's Testimony

28       An ALJ's assessment of pain severity and claimant

14

1  credibility is entitled to "great weight."  See Weetman v.

2  Sullivan, 877 F.2d 20, 22 (9th Cir. 1989); Nyman v. Heckler, 779

3  F.2d 528, 531 (9th Cir. 1986).  "[T]he ALJ is not required to

4  believe every allegation of disabling pain, or else disability

5  benefits would be available for the asking, a result plainly

6  contrary to 42 U.S.C. § 423(d)(5)(A)."  Molina v. Astrue, 674

7  F.3d 1104, 1112 (9th Cir. 2012) (internal quotation marks and

8  citation omitted).  In evaluating a claimant's subjective-symptom

9  testimony, the ALJ engages in a two-step analysis.  See

10  Lingenfelter, 504 F.3d at 1035-36.  "First, the ALJ must

11  determine whether the claimant has presented objective medical

12  evidence of an underlying impairment [that] could reasonably be

13  expected to produce the pain or other symptoms alleged."  Id. at

14  1036 (internal quotation marks omitted).  If such objective

15  medical evidence exists, the ALJ may not reject a claimant's

16  testimony "simply because there is no showing that the impairment

17  can reasonably produce the *degree* of symptom alleged."  Smolen,

18  80 F.3d at 1282 (emphasis in original).  When the ALJ finds a

19  claimant's subjective complaints not credible, the ALJ must make

20  specific findings that support the conclusion.  See Berry v.

21  Astrue, 622 F.3d 1228, 1234 (9th Cir. 2010).  Absent affirmative

22  evidence of malingering, those findings must provide "clear and

23  convincing" reasons for rejecting the claimant's testimony.

24  Lester, 81 F.3d at 834.  If the ALJ's credibility finding is

25  supported by substantial evidence in the record, the reviewing

26  court "may not engage in second-guessing."  Thomas, 278 F.3d at

27  959.

28       Here, the ALJ rejected Plaintiff's testimony for the same

1  reasons he rejected Dr. Lee's RFC assessment.  (See AR 27-28.)

2  As discussed above, the majority of the reasons the ALJ gave were

3  not consistent with the record.  He also rejected her testimony

4  because her allegations of "disabling pain" were inconsistent

5  with her daily activities.  (AR 26.)  He found that Plaintiff's

6  ability to feed her dogs and play computer games indicated that

7  she had "some use of her upper extremities" (id.), but he did not

8  explain why feeding her dogs, as she presumably had to to prevent

9  them from starving, or occasionally playing a computer game meant

10 that she was not in pain.  He did not address her ability to

11 stand or walk or her need to keep her legs elevated during

12 periods of prolonged sitting; his only comment regarding

13 Plaintiff's leg impairments was that no objective evidence of a

14 knee impairment existed to support Plaintiff's claims of her

15 right knee "locking up."  (Id.)  The ALJ's evaluation of

16 Plaintiff's daily activities in relation to her subjective-

17 symptom testimony was thus not supported by substantial evidence.

18 See Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001)

19 (noting that "[t]his court has repeatedly asserted that the mere

20 fact that a plaintiff has carried on certain [limited] daily

21 activities . . . does not in any way detract from her credibility

22 as to her overall disability" and "[o]ne does not need to be

23 'utterly incapacitated' in order to be disabled," and further

24 noting that a claimant "may do these activities despite pain for

25 therapeutic reasons, but that does not mean she could concentrate

26 on work despite the pain or could engage in similar activity for

27 a longer period given the pain involved"); Moya v. Astrue, No.

28 EDCV 10-01584-JEM, 2011 WL 5873035, at *8 (C.D. Cal. Nov. 22,

1  2011) (reversing ALJ's decision because his evaluation of

2  plaintiff's daily activities did not address important evidence

3  in record and activities cited were "not inconsistent" with

4  Plaintiff's alleged symptoms).  Because the ALJ's credibility

5  finding was not supported by substantial evidence, his decision

6  must be reversed.

7         C.   Other Issues

8         Plaintiff also alleges that the ALJ erred in determining

9  that she had the RFC to perform other work as of March 11, 2006.

10 (J. Stip. at 22-25, 27-29; AR 29.)  Because the Court finds that

11 the ALJ erred in evaluating Dr. Lee's opinion and Plaintiff's

12 credibility, it is not necessary for it to address the remainder

13 of Plaintiff's arguments.  See Negrette v. Astrue, No. EDCV 08-

14 0737 RNB, 2009 WL 2208088, at *2 (C.D. Cal. July 21, 2009)

15 (finding it unnecessary to address further disputed issues when

16 court found that ALJ failed to properly consider treating

17 doctor's opinion and laywitness testimony).  On remand, the ALJ

18 will necessarily reevaluate Plaintiff's RFC after reconsidering

19 the evidence of record consistent with this opinion.

20 **VI.   CONCLUSION**

21        When error exists in an administrative determination, "the

22 proper course, except in rare circumstances, is to remand to the

23 agency for additional investigation or explanation."  INS v.

24 Ventura, 537 U.S. 12, 16, 123 S. Ct. 353, 355, 154 L. Ed. 2d 272

25 (2002) (citations and quotation marks omitted); Moisa v.

26 Barnhart, 367 F.3d 882, 886 (9th Cir. 2004).  Accordingly,

27 remand, not an award of benefits, is the proper course in this

28 case.  See Strauss v. Comm'r of Soc. Sec. Admin., 635 F.3d 1135,

1   1136 (9th Cir. 2011) (remand for automatic payment of benefits

2   inappropriate unless evidence unequivocally establishes

3   disability).  As noted above, on remand, the ALJ will necessarily

4   reevaluate Dr. Lee's RFC assessment and Plaintiff's testimony and

5   make additional findings regarding Plaintiff's RFC consistent

6   with this opinion.

7                                    **ORDER**

8        Accordingly, **IT IS HEREBY ORDERED** that (1) the decision of

9   the Commissioner is REVERSED; (2) Plaintiff's request for remand

10  is GRANTED; and (3) this action is REMANDED for further

11  proceedings consistent with this Memorandum Opinion.

12       **IT IS FURTHER ORDERED** that the Clerk of the Court serve

13  copies of this Order and the Judgment herein on all parties or

14  their counsel.

15

16  DATED: January 7, 2013

17                                  JEAN ROSENBLUTH
                                    U.S. Magistrate Judge

18

19

20

21

22

23

24

25

26

27

28