O

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| PRENTICE A. HALE,<br><br>       Plaintiff,<br><br>    vs.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of the Social<br>Security Administration,<br><br>       Defendant. | ) Case No. CV 12-1906-JPR<br>)<br>)<br>) MEMORANDUM OPINION AND ORDER<br>) REVERSING COMMISSIONER AND<br>) REMANDING FOR FURTHER<br>) PROCEEDINGS<br>)<br>)<br>)<br>)<br>) |

**I.   PROCEEDINGS**

Plaintiff seeks review of the Commissioner's final decision denying her application for Social Security disability insurance benefits ("DIB"). The parties consented to the jurisdiction of the undersigned U.S. Magistrate Judge pursuant to 28 U.S.C. § 636(c). This matter is before the Court on the parties' Joint Stipulation, filed December 13, 2012, which the Court has taken under submission without oral argument. For the reasons stated below, the Commissioner's decision is reversed and this matter is remanded for further proceedings.

## II. BACKGROUND

Plaintiff was born on May 26, 1959. (Administrative Record ("AR") 38.) She has a high school diploma. (Id.) Plaintiff worked for approximately 27 years as a telephone operator. (AR 41-42, 158.) She stopped working on January 8, 2005, when she was injured in an automobile accident. (AR 166, 295-96.) On November 17, 2008, Plaintiff filed an application for DIB, alleging a disability onset date of January 8, 2005. (AR 144.) The application was denied on March 10, 2009. (AR 96-101.)

After Plaintiff's application was denied, she requested a hearing before an Administrative Law Judge ("ALJ"). (AR 105-06.) A hearing was held on May 27, 2010, at which Plaintiff, who was represented by counsel, testified on her own behalf. (AR 34-86.) Vocational Expert ("VE") Stephen Berry also testified. (Id.) On August 10, 2010, the ALJ issued a written decision determining that good cause existed to reopen Plaintiff's December 7, 2005 DIB application[1] and that Plaintiff was disabled from January 8, 2005, to March 10, 2006, but not after that. (AR 15-33.) On October 8, 2010, Plaintiff requested review of that portion of the ALJ's decision denying benefits as of March 11, 2006. (AR 10-14.) On December 21, 2011, the Appeals Council denied Plaintiff's request for review. (AR 3-7.) This action followed.

## III. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free of legal error and

---

[1] The Administrative Record does not contain a copy of this application.

1 are supported by substantial evidence based on the record as a
2 whole.  § 405(g); Richardson v. Perales, 402 U.S. 389, 401, 91 S.
3 Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971); Parra v. Astrue, 481
4 F.3d 742, 746 (9th Cir. 2007).  Substantial evidence means such
5 evidence as a reasonable person might accept as adequate to
6 support a conclusion.  Richardson, 402 U.S. at 401; Lingenfelter
7 v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007).  It is more than
8 a scintilla but less than a preponderance.  Lingenfelter, 504
9 F.3d at 1035 (citing Robbins v. Soc. Sec. Admin., 466 F.3d 880,
10 882 (9th Cir. 2006)).  To determine whether substantial evidence
11 supports a finding, the reviewing court "must review the
12 administrative record as a whole, weighing both the evidence that
13 supports and the evidence that detracts from the Commissioner's
14 conclusion."  Reddick v. Chater, 157 F.3d 715, 720 (9th Cir.
15 1996).  "If the evidence can reasonably support either affirming
16 or reversing," the reviewing court "may not substitute its
17 judgment" for that of the Commissioner.  Id. at 720-21.

**IV.   THE EVALUATION OF DISABILITY**

People are "disabled" for purposes of receiving Social
Security benefits if they are unable to engage in any substantial
gainful activity owing to a physical or mental impairment that is
expected to result in death or which has lasted, or is expected
to last, for a continuous period of at least 12 months.  42
U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257
(9th Cir. 1992).

   A.   The Five-Step Evaluation Process

The ALJ follows a five-step sequential evaluation process in
assessing whether a claimant is disabled.  20 C.F.R.

3

§ 404.1520(a)(4); Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995) (as amended Apr. 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim must be denied. § 404.1520(a)(4)(i). If the claimant is not engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, the claimant is not disabled and the claim must be denied. § 404.1520(a)(4)(ii). If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. § 404.1520(a)(4)(iii). If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient residual functional capacity ("RFC")[2] to perform her past work; if so, the claimant is not disabled and the claim must be denied. § 404.1520(a)(4)(iv). The claimant has the burden of proving that she is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets that burden, a

---

[2] RFC is what a claimant can still do despite existing exertional and nonexertional limitations. 20 C.F.R. § 404.1545; see Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

prima facie case of disability is established. <u>Id.</u> If that happens or if the claimant has no past relevant work, the Commissioner then bears the burden of establishing that the claimant is not disabled because she can perform other substantial gainful work available in the national economy. § 404.1520(a)(4)(v). That determination comprises the fifth and final step in the sequential analysis. § 404.1520; <u>Lester</u>, 81 F.3d at 828 n.5; <u>Drouin</u>, 966 F.2d at 1257.

B.   The ALJ's Application of the Five-Step Process

At step one, the ALJ found that Plaintiff had not engaged in any substantial gainful activity since January 8, 2005. (AR 22.) At step two, the ALJ concluded that Plaintiff had the severe impairments of "history of injury to the left upper extremity, status post surgery to the left proximal arm with residual weakness and paralysis; morbid obesity; and non-insulin-dependent diabetes mellitus." (<u>Id.</u>) At step three, the ALJ determined that Plaintiff's impairments did not meet or equal any of the impairments in the Listing. (AR 24.) At step four, the ALJ found that Plaintiff was unable to work from January 8, 2005, to March 10, 2006 (<u>id.</u>), but beginning March 11, 2006, Plaintiff's disability ended and she was able to perform "light work"[3] with the limitations that Plaintiff

>    can stand and walk up to 4 hours and sit up to 6 hours in

---

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds," a "good deal of walking or standing" or sitting, "with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b). A person capable of performing light work is also capable of performing sedentary work, as defined in § 404.1567(a). <u>Id.</u>

5

> an 8-hour workday with normal breaks. She can perform work that does not require climbing ladders, ropes or scaffolds, or crawling, and no more than occasional climbing of ramps or stairs, balancing[,] stooping, kneeling and crouching. The claimant is right-hand dominant and cannot lift, reach, push, pull, handle, or finger objects with her non-dominant left upper extremity/hand. She can perform work that does not require even moderate exposure to extreme vibration and no exposure to extreme cold, hazardous machinery, unprotected heights, or other high risk, hazardous or unsafe conditions.

(AR 25-26.) Based on the VE's testimony, the ALJ concluded that Plaintiff could not perform her past relevant work as a telephone operator but had the RFC to perform such jobs as greeter and final inspector. (AR 29.) The ALJ concluded that jobs existed in significant numbers in the national economy that Plaintiff could perform. (Id.) Accordingly, the ALJ determined that Plaintiff was not disabled. (AR 30.)

**V.   DISCUSSION**

Plaintiff alleges that the ALJ erred in (1) evaluating and weighing the findings and opinions of Plaintiff's treating physician; (2) evaluating Plaintiff's credibility; and (3) finding that Plaintiff could perform other work as of March 11, 2006. (J. Stip at 2-3.) Because the ALJ rejected Plaintiff's treating physician's opinion and Plaintiff's testimony for reasons that were not supported by the record, the ALJ's decision must be reversed and this matter remanded for further

6

proceedings.

### A. The ALJ Erred in Rejecting Plaintiff's Treating Physician's Opinion

Three types of physicians may offer opinions in social security cases: "(1) those who treat[ed] the claimant (treating physicians); (2) those who examine[d] but d[id] not treat the claimant (examining physicians); and (3) those who neither examine[d] nor treat[ed] the claimant (non-examining physicians)." Lester, 81 F.3d at 830. A treating physician's opinion is generally entitled to more weight than the opinion of a doctor who examined but did not treat the claimant, and an examining physician's opinion is generally entitled to more weight than that of a nonexamining physician. Id.

The opinions of treating physicians are generally afforded more weight than the opinions of nontreating physicians because treating physicians are employed to cure and have a greater opportunity to know and observe the claimant. Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996). The weight given a treating physician's opinion depends on whether it was supported by sufficient medical data and was consistent with other evidence in the record. See 20 C.F.R. § 404.1527(c)(2). If a treating physician's opinion was well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, it should be given controlling weight and rejected only for "clear and convincing" reasons. See Lester, 81 F.3d at 830; § 404.1527(c)(2). When a treating physician's opinion conflicts with other medical evidence or was not supported by clinical or

7

1  laboratory findings, the ALJ must provide only "specific and
2  legitimate reasons" for discounting that doctor's opinion. <u>Orn</u>
3  <u>v. Astrue</u>, 495 F.3d 625, 632 (9th Cir. 2007).  Indeed, the ALJ
4  may discredit treating-doctor opinions that are conclusory,
5  brief, and unsupported by the record as a whole or by objective
6  medical findings.  See <u>Batson v. Comm'r of Soc. Sec. Admin.</u>, 359
7  F.3d 1190, 1195 (9th Cir. 2004); <u>Thomas v. Barnhart</u>, 278 F.3d
8  947, 957 (9th Cir. 2002).  Other factors relevant to the
9  evaluation of a treating physician's opinion include the
10 "[l]ength of the treatment relationship and the frequency of
11 examination" as well as the "[n]ature and extent of the treatment
12 relationship" between the patient and the physician.
13 § 404.1527(c)(2)(i)-(ii).
14      Plaintiff's treating physician, Dr. Luani Lee, filled out an
15 RFC Questionnaire form in July 2010, stating that she had seen
16 Plaintiff every three months for a year and that Plaintiff had
17 "Diabetes, Hyperlipidemia, Hypertension, Obesity, [and]
18 Depression," which caused "chronic leg pain, fatigue,
19 depression," and "[p]ain while walking on bilateral legs."  (AR
20 369.)  She stated that the clinical findings and objective signs
21 supporting her diagnosis were "depression from chronic disability
22 after motor vehicle accident 5 years ago" and "[o]besity."  (<u>Id.</u>)
23 She opined that Plaintiff could walk one city block without rest
24 or severe pain, sit for one hour and stand for 10 minutes at a
25 time before needing to change position, and sit for at least six
26 hours and stand and walk for less than two hours in an eight-hour
27 workday.  (AR 370-71.)  She stated that Plaintiff could lift 10
28 pounds frequently and 20 pounds occasionally.  (AR 371.)  She

also noted that with "prolonged sitting," Plaintiff would need to elevate her leg to above heart level for two hours of an eight-hour workday. (Id.)  At the hearing, the VE testified that if Plaintiff needed to elevate her leg to above heart level, she would be unable to work.  (AR 74.)

The ALJ discounted Dr. Lee's opinion for the following reasons: she had seen Plaintiff only "about four times during the period of a year"; the medical records of Plaintiff's foot abscess and hypertension did not support her highly restricted RFC; a gap in treatment between March 2006 and October 2008 indicated that Plaintiff's conditions had improved; Dr. Lee's finding that Plaintiff did not need an assistive device to walk "is another indication that [her] functional limitations (particularly her ability to walk) is [sic] not as significant as alleged"; Plaintiff's claim that she had taken insulin for her diabetes since 2008 was "not well-documented in the treatment notes"; there was no indication in the record that Plaintiff's foot abscess lasted 12 months; there were no findings in the record indicating that Plaintiff's "severe diabetes and nonsevere hypertension" caused fatigue; Plaintiff "has not been hospitalized for severe complications from diabetes or hypertension"; and there was no evidence of "significant end organ damage."  (AR 23, 25, 27.)  He also discounted Dr. Lee's opinions regarding Plaintiff's depression because Dr. Lee was not a mental-health specialist and no evidence existed in the record that Plaintiff had ever been treated for depression.  (AR 23.)

The ALJ properly rejected Dr. Lee's findings regarding Plaintiff's depression because no documentation in the record

showed that Plaintiff's depression affected her ability to work. On the contrary, Plaintiff testified that she got along well with others (AR 65), and in her disability application she reported that she could pay attention and follow instructions well, always finished what she started, had "no problem with authority," and handled stress and changes in routine "OK." (AR 186.) Both the consultative psychologist and the state agency psychiatrist who examined Plaintiff for mental impairments concluded that she had no mental impairments or limitations. (AR 320-24, 331-41.) The ALJ also properly discounted Dr. Lee's opinion regarding Plaintiff's mental health because she was not a mental-health specialist, unlike the two examining doctors. See 20 C.F.R. § 404.1527(d)(5); Holohan v. Massanari, 246 F.3d 1195, 1203 n.3 (9th Cir. 2001) (treating physician's opinion may be "entitled to little if any weight" if physician "offers an opinion on a matter not related to her . . . area of specialization"). Plaintiff has not presented any evidence that her depression was a severe impairment.

Several of the ALJ's reasons for rejecting Dr. Lee's RFC findings, however, are directly contradicted by the evidence of record, and reversal is therefore warranted. The ALJ stated that the record did not show that Plaintiff had been hospitalized for complications from diabetes, when in fact the record shows that she was hospitalized from October 31 to November 2, 2008, because of "[r]ight foot abscess/cellulitis/diabetic foot." (AR 280-82.) The ALJ appears to have treated Plaintiff's foot abscess, leg swelling, and diabetes as separate, unrelated conditions (see AR 28) when in fact the abscess and swelling appear to have been

caused by the diabetes (see AR 280-82); the ALJ's evaluation of those conditions was thus inconsistent with the record as a whole. See Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) (ALJ must consider "entire record as a whole"). Moreover, there is significant evidence in the record that Plaintiff's diabetes was poorly controlled, further supporting Dr. Lee's finding that it limited her ability to work. (See AR 216 (December 2008, noting that Plaintiff's blood sugar was "still ranging from 250-325" and "today [was] 415");[4] AR 365 (January 2009, noting that Plaintiff's diabetes mellitus under "poor control"); AR 366 (January 2009, diabetes "uncontrolled"); (AR 367 (January 2009, blood-sugar reading of 307); AR 314 (February 2009, noting that Plaintiff's blood sugar was "usually in the low 200s"); AR 356 (November 2009, diabetes "moderately controlled"); AR 355 (March 2010, diabetes "out of control").) The record also showed that although the abscess in Plaintiff's right foot had healed by March 2010, she continued to have ongoing problems with swelling in her legs. (See AR 355 (noting "0 sores" on feet but "pitting edema" in lower extremities); see also AR 216-17, 278-90, 342, 356-68 (documenting instances of leg swelling between October 2008 and March 2010).) The ALJ did not address this evidence. He noted, somewhat confusingly, that the medical evidence in the record since October 31, 2008, "focuses

---

[4]Target blood-sugar levels for nonpregnant adults with diabetes are 70-130 milligrams per deciliter before a meal and less than 180 milligrams per deciliter after a meal. See Checking Your Blood Glucose - American Diabetes Association, available at http://www.diabetes.org/living-with-diabetes/treatment-and-care/blood-glucose-control/checking-your-blood-glucose.html (last visited Dec. 21, 2012).

11

on the claimant's diabetes mellitus, a right foot abscess caused by a bacterial infection, hypertension and routine medical care, rather than on her left upper extremity impairment, which is an indication that her left upper extremity has improved." (AR 25.) But the ALJ also found that Plaintiff's diabetes was a severe impairment (AR 22) – thus, the medical evidence of her diabetes complications would seem to bolster, rather than disprove, her disability claims.

The ALJ's finding that Plaintiff's diabetes was "non-insulin-dependent" because insufficient documentation existed in the record that Plaintiff took insulin for it (AR 22, 28) is also directly contradicted by the record, which shows that Plaintiff was taking insulin since at least 2005 and was continuously prescribed insulin from October 2008 through at least March 2010. (See AR 298 (noting in January 2005 that Plaintiff's blood sugar was nearly 600 when admitted to hospital and was then "controlled [with] insulin"); AR 216-18, 278-90, 355-68 (showing Plaintiff prescribed NPH[5] and regular insulin consistently between November 2008 and March 2010).) Thus, it was improper for the ALJ to reject Dr. Lee's opinion on that basis.

The ALJ also erred in discounting Dr. Lee's opinion because she had treated Plaintiff only four times in a year. (AR 28.) The ALJ found that because Dr. Lee "only saw [Plaintiff] for a

---

[5]NPH (Neutral Protamine Hagedorn) insulin is a slower-acting insulin lasting approximately 18-26 hours from injection. See MedicineNet.com, Insulin - drug class, medical uses, medication side effects, and drug interactions, available at http://www.medicinenet.com/insulin/article.htm (last visited Dec. 21, 2012).

12

year, and only once every three months at that . . . [that] is one indication that Dr. Lee does not find her impairments to be as significant as alleged." (Id.)  But the record shows that between 2008 and 2010 Dr. Lee referred Plaintiff to several other doctors at Harbor UCLA Medical Center for tests and treatment (see AR 213-312, 355-68), and Dr. Lee presumably continued to oversee Plaintiff's care during that time.  Thus, her opinion was entitled to "greater weight than that of an examining or reviewing physician."  Benton ex rel. Benton v. Barnhart, 331 F.3d 1030, 1037, 1038-39 (9th Cir. 2003) (physician's opinion entitled to greater weight afforded treating physicians when, despite seeing plaintiff only once, physician "employed to cure" and using "team approach" "had the opportunity to direct and communicate with the treatment team over time, and is presumably well placed to know their skills, abilities, and therapeutic techniques").

    The ALJ's finding that Plaintiff's RFC was less restricted than Dr. Lee opined because Plaintiff did not need an assistive device to walk or stand was also not supported by the record. Dr. Lee did not state that Plaintiff could not walk or stand on her own; instead, she stated that Plaintiff could not walk for more than two hours a day and could sit for more than six hours but would need to elevate her leg above heart level for at least two hours a day when doing so.  (AR 370-71.)  The fact that Plaintiff did not use an assistive device is not inconsistent with these findings.

    The ALJ's finding that the gap in treatment between March 2006 and October 2008 showed that Plaintiff's condition had

improved was also improper.  An ALJ "must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment."  SSR 96-7p, 1996 WL 374186, at *7.  Plaintiff reported to the consulting examiner, Dr. Rocely Ella-Tamayo, that she did not have medical insurance "for 2 years . . . until October 2008."  (AR 313-14.)  Plaintiff's lack of insurance could have explained the gap in treatment.  But the ALJ did not question Plaintiff about it during the hearing, nor did he seek an explanation for it at any other time.  His adverse finding was thus improper.  See SSR 96-7p; see also Orn, 495 F.3d at 638 (holding that adverse finding based on gap in treatment is inappropriate if claimant lacked insurance and could not afford treatment in question).

The majority of the ALJ's reasons for rejecting Dr. Lee's opinion were not supported by the record, and thus his decision should be reversed.  Cf. Schow v. Astrue, 272 F. App'x 647, 652-53 (9th Cir. 2008) (holding that ALJ's reasons for rejecting plaintiff's credibility not supported by substantial evidence when "at least five" of eight reasons not supported by record).  The Court cannot say that these errors taken as a whole were harmless, particularly given that, as explained below, the ALJ also erred in assessing Plaintiff's credibility.

  B.  The ALJ Erred in Rejecting Plaintiff's Testimony

An ALJ's assessment of pain severity and claimant

14

1  credibility is entitled to "great weight."  See Weetman v.
2  Sullivan, 877 F.2d 20, 22 (9th Cir. 1989); Nyman v. Heckler, 779
3  F.2d 528, 531 (9th Cir. 1986).  "[T]he ALJ is not required to
4  believe every allegation of disabling pain, or else disability
5  benefits would be available for the asking, a result plainly
6  contrary to 42 U.S.C. § 423(d)(5)(A)."  Molina v. Astrue, 674
7  F.3d 1104, 1112 (9th Cir. 2012) (internal quotation marks and
8  citation omitted).  In evaluating a claimant's subjective-symptom
9  testimony, the ALJ engages in a two-step analysis.  See
10 Lingenfelter, 504 F.3d at 1035-36.  "First, the ALJ must
11 determine whether the claimant has presented objective medical
12 evidence of an underlying impairment [that] could reasonably be
13 expected to produce the pain or other symptoms alleged."  Id. at
14 1036 (internal quotation marks omitted).  If such objective
15 medical evidence exists, the ALJ may not reject a claimant's
16 testimony "simply because there is no showing that the impairment
17 can reasonably produce the *degree* of symptom alleged."  Smolen,
18 80 F.3d at 1282 (emphasis in original).  When the ALJ finds a
19 claimant's subjective complaints not credible, the ALJ must make
20 specific findings that support the conclusion.  See Berry v.
21 Astrue, 622 F.3d 1228, 1234 (9th Cir. 2010).  Absent affirmative
22 evidence of malingering, those findings must provide "clear and
23 convincing" reasons for rejecting the claimant's testimony.
24 Lester, 81 F.3d at 834.  If the ALJ's credibility finding is
25 supported by substantial evidence in the record, the reviewing
26 court "may not engage in second-guessing."  Thomas, 278 F.3d at
27 959.
28     Here, the ALJ rejected Plaintiff's testimony for the same

reasons he rejected Dr. Lee's RFC assessment.  (See AR 27-28.) As discussed above, the majority of the reasons the ALJ gave were not consistent with the record.  He also rejected her testimony because her allegations of "disabling pain" were inconsistent with her daily activities.  (AR 26.)  He found that Plaintiff's ability to feed her dogs and play computer games indicated that she had "some use of her upper extremities" (id.), but he did not explain why feeding her dogs, as she presumably had to to prevent them from starving, or occasionally playing a computer game meant that she was not in pain.  He did not address her ability to stand or walk or her need to keep her legs elevated during periods of prolonged sitting; his only comment regarding Plaintiff's leg impairments was that no objective evidence of a knee impairment existed to support Plaintiff's claims of her right knee "locking up."  (Id.)  The ALJ's evaluation of Plaintiff's daily activities in relation to her subjective-symptom testimony was thus not supported by substantial evidence. See Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) (noting that "[t]his court has repeatedly asserted that the mere fact that a plaintiff has carried on certain [limited] daily activities . . . does not in any way detract from her credibility as to her overall disability" and "[o]ne does not need to be 'utterly incapacitated' in order to be disabled," and further noting that a claimant "may do these activities despite pain for therapeutic reasons, but that does not mean she could concentrate on work despite the pain or could engage in similar activity for a longer period given the pain involved"); Moya v. Astrue, No. EDCV 10-01584-JEM, 2011 WL 5873035, at *8 (C.D. Cal. Nov. 22,

2011) (reversing ALJ's decision because his evaluation of plaintiff's daily activities did not address important evidence in record and activities cited were "not inconsistent" with Plaintiff's alleged symptoms). Because the ALJ's credibility finding was not supported by substantial evidence, his decision must be reversed.

### C. Other Issues

Plaintiff also alleges that the ALJ erred in determining that she had the RFC to perform other work as of March 11, 2006. (J. Stip. at 22-25, 27-29; AR 29.) Because the Court finds that the ALJ erred in evaluating Dr. Lee's opinion and Plaintiff's credibility, it is not necessary for it to address the remainder of Plaintiff's arguments. See Negrette v. Astrue, No. EDCV 08-0737 RNB, 2009 WL 2208088, at *2 (C.D. Cal. July 21, 2009) (finding it unnecessary to address further disputed issues when court found that ALJ failed to properly consider treating doctor's opinion and laywitness testimony). On remand, the ALJ will necessarily reevaluate Plaintiff's RFC after reconsidering the evidence of record consistent with this opinion.

## VI. CONCLUSION

When error exists in an administrative determination, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." INS v. Ventura, 537 U.S. 12, 16, 123 S. Ct. 353, 355, 154 L. Ed. 2d 272 (2002) (citations and quotation marks omitted); Moisa v. Barnhart, 367 F.3d 882, 886 (9th Cir. 2004). Accordingly, remand, not an award of benefits, is the proper course in this case. See Strauss v. Comm'r of Soc. Sec. Admin., 635 F.3d 1135,

1136 (9th Cir. 2011) (remand for automatic payment of benefits inappropriate unless evidence unequivocally establishes disability). As noted above, on remand, the ALJ will necessarily reevaluate Dr. Lee's RFC assessment and Plaintiff's testimony and make additional findings regarding Plaintiff's RFC consistent with this opinion.

**ORDER**

Accordingly, **IT IS HEREBY ORDERED** that (1) the decision of the Commissioner is REVERSED; (2) Plaintiff's request for remand is GRANTED; and (3) this action is REMANDED for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: January 7, 2013

_____
JEAN ROSENBLUTH
U.S. Magistrate Judge